OPINION OF THE COURT
Arthur S. Hirsch, J.
In April, 1980, the media spotlight fell upon one Ronald *1132 Drew, a tenured teacher employed within the New York City school district for over 20 years. The teacher was arrested and indicted for selling obscene photographs depicting children involved in various forms of deviant sexual conduct and intercourse. The acts of which Mr. Drew is accused basically constitute the crime of "promoting an obscene sexual performance by a child.”
The public outcry was extensive in reaction to the repugnant nature of the alleged crime. The teacher has been indicted, but has not yet been tried on the obscenity charges. The court recognizes the seriousness of these criminal charges and comprehends the public anger that has been engendered. If, after a criminal trial, a jury, from the evidence, finds Mr. Drew to be guilty as charged, it would indicate the defendant to be a person of low and depraved morals and one who, in the personal opinion of this court, should not be permitted to remain in the school system teaching our children.
But this court is not involved in the issues of his guilt or innocence, nor is it the intent of the court to prosecute or judge the acts for which Mr. Drew has been indicted. Our laws wisely presume innocence until proof at trial indicates guilt. To preserve the integrity and credibility of the law, this court must and will render a decision only on the issues before it and will do so dispassionately.
To comprehend the narrow question of law that is before the court as a result of two separate but related applications made by the parties regarding the dismissal and pension rights of the teacher, it is necessary to view the fact pattern preceding the submission of the applications and the history of the law involved.
THE FACTS
Charged with three counts of obscenity, Ronald Drew was indicted on March 28, 1980 by a Queens County Grand Jury. The indictment left the teacher vulnerable to the bringing of charges against him by his employer, the board of education, for conduct unbecoming a teacher, which conduct would render him unfit to properly perform his duties. On April 15, 1980, shortly after his indictment and before the board started disciplinary proceedings, Mr. Drew, for obvious reasons, submitted an application for leave of absence and terminal leave forms, in which he stated his intent to have terminal leave (or retirement) commenced as of May 2, 1980.
*1133 The community superintendent of the community school board in the district in which Drew taught was advised of the indictment and the basis thereof. Notwithstanding that the case was pending and scheduled for criminal trial and that normally administrative agencies do not hold disciplinary trial proceedings until after a verdict in a criminal matter, the situation that arose in this instance provoked a different response. Here, the teacher’s exigent desire for immediate retirement was in direct conflict with the pressing resolve of the chancellor and the board of education to prevent that retirement in order to retain jurisdiction of their employee for disciplinary purposes, with discharge and elimination of pension their desired goal.
The community board was urged by the chancellor to fulfill their legal obligations and commence proceedings under sections 2590-j and 3020-a of the Education Law, preferring charges against Drew. The board refused and made it known that at least half of the board was opposed to taking disciplinary actions against the indicted teacher. The chancellor, upon the refusal of the local board, superseded the local community board and appointed three trustees to replace the board for the purpose of administrating its affairs. The trustees acted, and on April 19, 1980, found probable cause for charges against Drew that he was guilty of conduct unbecoming a teacher. Drew was relieved of his classroom duties. On April 21, the hearing on charges against the tenured school district employee was begun and on that same day, the chancellor obtained a temporary restraining order in the first of the actions before this court, Matter of Macchiarola v Teachers’ Retirement Bd. of N. Y. City, directing the retirement board not to accept Drew’s application pending a determination of the matter on its merits. On May 5, 1980, the teacher sought to restrain the continuation of the disciplinary proceeding, but that relief was denied by Mr. Justice Gerald Held.
Despite much legal maneuvering on both sides to delay or expedite the disciplinary proceedings, according to the interests of the respective parties, a hearing was conducted before a hearing panel pursuant to Education Law, albeit under unusually hasty conditions, where, on May 14, 1980, the panel unanimously found that the chancellor’s appointed trustees had sustained their burden of proof as to the disciplinary charges against Drew, and consequently, he was dismissed.
*1134 The second of the applications before this court, Matter of Drew v Macchiarola, was initiated by Drew with the aforementioned motion for a temporary restraining order regarding the disciplinary proceeding. It is brought to challenge the legality and propriety of the action of the chancellor in his suspension of the community school board, charging violations in 10 separate causes of action, including impropriety in the composition and conduct of the panel finding probable cause and in the proceedings followed by the disciplinary panel.
A subsequent motion was made by the chancellor to add necessary parties to the Drew application. However, a concomitant motion was made by the teacher to discontinue that application without prejudice, pursuant to CPLR 3217 (subd [b]), on grounds that the essential nature of Drew’s claim has changed subsequent to the culmination of the disciplinary hearing and his dismissal, and that he desires to re-evaluate his position, determining whether to continue with legal action in this forum or in another forum or whether to continue at all.
After hearing the parties and examining the papers submitted, the court concludes that the substantial rights of the board of education would not be impaired or prejudiced by the discontinuance (Schimansky v Moduline Inds., 79 Misc 2d 888, afid 50 AD2d 634; Louis R. Shapiro, Inc. v Milspemes Corp., 20 AD2d 857) and therefore the petition by the teacher to withdraw his petition is granted, without prejudice and without costs.
All that is now before the court is the petition of the chancellor against the retirement board and Drew, where it is alleged that, pursuant to section 3019-a of the Education Law, respondent teacher must give his employer, the board of education, 30 days’ notice of his intent to retire and that the teachers’ retirement board was without power to accept the retirement application because of petitioner’s failure to serve said notice. The cardinal question of law to be determined in this matter is whether section 3019-a is to be automatically applied to all terminations of service, including retirement.
THE LAW
The one provision in the Administrative Code of the City of New York which specifically governs teachers’ retirement rights is section B20-41.0. The part relevant to the issue provides:
*1135 "Retirement; service and superannuation. — Retirement for service shall be as follows:
"1. Any contributor may retire from service upon written application to such board setting forth at what time subsequent to the execution of such application he desires to be retired. Such application shall retire such contributor at the time so specified”.
Other city services have similar retirement provisions, with a glaring exception, as will be noted.
Police Department: section B18-40.0 of the Administrative Code states, in part: "Retirement * * * Any member in city-service who shall have attained the minimum age or period of service retirement elected by him upon his own written application to and filed with the board setting forth at what time, not less than thirty days subsequent to the execution and filing thereof, he desires to be retired, shall be retired as of the date specified in said application” (emphasis added).
Fire Department: section B19-7.81 of the Administrative Code: "Retirement * * * Any member in city-service who shall have attained the minimum age or period of service retirement elected by him upon his own written application to and filed with the board setting forth at what time, not less than thirty days subsequent to the execution and filing thereof, he desires to be retired, shall be retired as of the date specified in said application” (emphasis added).
It is patently clear that the statutory scheme regarding retirement, as stated in the Administrative Code, expressly provides a filing time condition for police and firemen, while within the same group of laws, permits the teacher the option of selecting his own date of retirement without condition, i.e., giving notice within a specified time. The reasons precipitating the difference may stem from past occurrences of disciplinary problems within the other departments. For example, in 1943, prior to the legislators’ placing a time restriction in the Administrative Code pertaining to police retirement, the Appellate Division, Second Department, in Matter of Pierne v Valentine (266 App Div 70), the court held that the statute was self-executing and that the written application alone accomplished and effectuated the retirement. In that case, charges were brought against three policemen, charging them with dereliction of duty after they had filed their applications. The Legislature apparently did not anticipate similar disciplinary problems involving teachers and, hence, in 1951, *1136 while amending the retirement practice for police and firemen to require notice, did not include teachers in the changed procedures.
In 1979, a bill (S6135 — A7275) was sponsored in the Legislature, which would amend the pre-existing provisions of the Administrative Code by increasing the retirement notification condition of policemen and firemen to 60 days and, for the first time, set a similar time condition for teachers, so as to make all three city services’ retirement procedures uniform. The bill was rejected. If the Legislature now sees fit, in light of new circumstances, to re-evaluate its position, it is the Legislature who must initiate changes in the Administrative Code, not the courts.
In Matter of Rogalin v New York City Teachers’ Retirement Bd. (265 App Div 801, affd 290 NY 664), a case often cited where the interpretation of the retirement section of the Administrative Code is at issue, serious charges were preferred against a principal in the New York City school system and he was suspended. On the day following his formal suspension, he filed application for retirement, designating the next day as the effective date thereof. The lower court, later affirmed, without opinion by the Court of Appeals, held that the application itself retired a teacher at the specific time and no additional action on the part of the retirement board was necessary. In other words, the court found teachers’ retirement applications to be self-executing.
The Rogalin case concededly was decided prior to the enactment of the Education Law upon which the chancellor, petitioner, relies, but the law, promulgated in 1960, is administratively oriented and was enacted to protect probationary teachers (Matter of Eikel, 2 Ed Dept Rep 238) and to protect the interest of the pupils by ensuring continuous pedagogic presence in the classroom (Matter of Central School Dist. No. 1 of Town of Smithtown, Suffolk County, 2 Ed Dept Rep 438). The statute (Education Law, § 3019-a), in toto, follows:
"Notice of termination of service by teachers
"A teacher who desires to terminate his services to a school district at any time, shall file a written notice thereof with the school authorities of such school district or with the board of cooperative educational services or county vocational education and extension board at least thirty days prior to the date of such termination of services. School authorities or such boards which desire to terminate the services of a teacher *1137 during the probationary period shall give a written notice thereof to such teacher at least thirty days prior to the effective date of such termination of services.”
Of particular import is the fact that any violation of the notice requirements of section 3019-a invites mere administrative rebukes in the form of censure and reprimand and does not warrant extreme disciplinary action (Matter of Union Free School Dist. No. 5 of Town of Greenburgh, Westchester County, 8 Ed Dept Rep 31, 32). In 1975, in Matter of Zunic v Nyquist (48 NY2d 378, 380) the Appellate Division, Third Department, opined that "The primary impact of section 3019-a upon a school district is to provide a teacher with 30 days of paid salary which is nothing more than transitional aid to the teacher. Of course, section 3019-a obviously provides a mechanism which ensures a teacher actual notice of the termination so that he may seek other means of support. However, it does not appear that * * * the Legislature intended compliance with section 3019-a to be a condition precedent to effective termination. ” (Emphasis added.)
The section makes no mention of its affecting any retirement policies or practice, yet were the statute to be so interpreted, as is petitioner’s contention, it would dictate a drastic change in teachers’ rights.
In view of the earlier decisions construing the teacher’s retirement application to be self-executing, the Legislature, if it intended to make so radical a change by limiting or qualifying teachers’ retirement rights, would undoubtedly have used plain language to indicate a nexus between section 3019-a of the Education Law and section B20-41.0 of the Administrative Code (see Matter of Pierne v Valentine, 266 App Div 70, 76, supra).
To augment respondent’s position that no correlation exists between the two laws, the Corporation Counsel, representing the teachers’ retirement board in this matter, states in its supportive affirmation: "The practice of the TRB (Teachers’ Retirement Board) over the past sixty (60) years has been to accept retirement applications, including post-1960 applications, without regard to the notice provisions of section 3019-a of the Education Law. Such practice was and is proper and not a misapplication, misappropriation or illegally disbursing of state funds or state property.”
It has long been established that an administrative interpretation, given by that agency called upon to act under a law, is *1138 entitled to great respect (Edwards v Darby, 12 Wheat [25 US] 206, 210; see, also, 1 Davis, Administrative Law Treatise [1958 ed], § 5.06). The contemporaneous and long-standing "self-exeouting” interpretation of retirement applications by the retirement board, the agency charged with the responsibility of setting the retirement laws into motion, must therefore be accorded serious weight. The learned Mr. Justice Cardozo has stated: "administrative practice, consistent and generally unchallenged, will not be overturned except for very cogent reasons” (Norwegian Nitrogen Co. v United States, 288 US 294, 315).
While the petitioner may have cogent reasons to require 30 days’ notice from petitioner Drew, the reasons are unique to the instant circumstances. They do not support overturning a long-established practice. Section 3019-a may not be utilized in the manner prescribed by the chancellor, for the statute, as contemplated by the Legislature, was not meant to effectuate the extensive changes petitioner desires.
It is the court’s considered opinion that the teacher Drew was not bound by any 30-day provision prior to filing his application for retirement and, in accordance with the stipulation of the parties entered on May 7, 1980, the teachers’ application for retirement will be honored and be deemed filed and accepted with the New York City teachers’ retirement board as of May 7, 1980.